IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| KIRK RAAB, | ) | |
| Plaintiff, | ) | Case No.: 08 C 50087 |
| | ) | |
| v. | ) | Judge Reinhard |
| | ) | |
| COUNTY OF JO DAVIESS, JO DAVIESS | ) | Magistrate Mahoney |
| COUNTY SHERIFF'S OFFICE, SHERIFF | ) | |
| LEO HEFEL in his official capacity as | ) | |
| Sheriff of Jo Daviess County and his | ) | |
| Individual capacity, CHIEF DEPUTY | ) | |
| COLIN FULRATH, in his official capacity | ) | |
| DONALD SCHWEIHS, in his official | ) | |
| Capacity as County of Jo Daviess Public | ) | |
| Defender and in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS COUNTY OF JO DAVIESS, SHERIFF HEFEL AND
CHIEF DEPUTY FULRATH'S ANSWER AND AFFIRMATIVE DEFENSES**

Defendants, County of Jo Daviess, Sheriff Leo Hefel, and Chief Deputy Colin

Fulrath, by their attorneys, Julie A. Bruch and O'Halloran Kosoff Geitner & Cook, LLC,

for their answer and affirmative defenses to Count I of plaintiff's Complaint, state as

follows:

Defendant County of Jo Daviess only admits that it is a necessary party to this case.

County of Jo Daviess denies that it can be substantively liable to plaintiff and denies all

allegations in the complaint that are made against it substantively as set forth in the

separate motion to dismiss. This answer and affirmative defenses are with respect to

defendant Hefel and Fulrath only.

1.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 and U.S.C. §1343 because this action arises under the laws of the United States, specifically the United States Constitution, the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983 and 42 U.S.C. §1988.

**ANSWER:**    The allegations of paragraph 1 are admitted.

2.      This Court has supplemental jurisdiction, under 28 U.S.C. § 1367(a), over Plaintiffs' state law claims because that claim is so related to the claims in this action with the Court's original jurisdiction that it forms part of the same case or controversy.

**ANSWER:**    The allegations of paragraph 2 are admitted.

3.      Venue is in this district and is proper pursuant to 28 U.S.C. Sec. 1391(b) because the facts which give rise to the claims asserted herein occurred in the Northern District of Illinois.

**ANSWER:**    The allegations of paragraph 3 are admitted.

## THE PARTIES

4.      Kirk Raab is a citizen of the United States and a resident of Jo Daviess County, Illinois. Kirk Raab is a Sergeant at the Jo Daviess County Sheriff's Office and has been employed with the Sheriff's Office since December 22, 1999.

**ANSWER:**    The allegations of paragraph 4 are admitted.

5.      The County of Jo Daviess is at all relevant times an administrative arm of the State of Illinois and maintains the Jo Daviess County Sheriff's Office to

enforce the laws of the State of Illinois, to ensure the public safety and maintain

order.

**ANSWER:** Defendants admit that the County of Jo Daviess is a county in the state of

Illinois and otherwise denies the allegations of paragraph 5 as not consistent with

Illinois law.

6.     The Jo Daviess County Sheriff's Office is a municipal agency of the

County. It maintains its headquarters at the Jo Daviess County Public Safety

Building, 330 North Bench Street, Galena, Illinois.

**ANSWER:** Defendants deny the allegations of paragraph 6.

7.     Sheriff Leo Hefel was elected to the position of Sheriff of Jo Daviess

County in November, 2006. At all times relevant herein, Sheriff Hefel was the Sheriff

of Jo Daviess County and is being sued individually and in his official capacity.

Sheriff Hefel, at all relevant times, was an agent for the County of Jo Daviess and

the Jo Daviess County Sheriff's Office and acted as a policy maker pursuant to

color of governmental authority vested in him by the State of Illinois and Jo

Daviess County.

**ANSWER:** Defendant admit the allegations in the first and second sentences of

paragraph 7.  Defendants deny the remaining allegations of paragraph 7 as inconsistent

with Illinois law.

8.     Chief Deputy Colin Fulrath is a police officer with the Jo Daviess

County Sheriff's Office and also serves as the Chief Deputy since November, 2006.

At all times relevant herein, Chief Deputy Fulrath is being sued individually and in

his official capacity. Chief Deputy Fulrath, at all relevant times, was an agent for the County of Jo Daviess and the Jo Daviess County Sheriff's Office and acted as a policy maker pursuant to color of governmental authority vested in him by the State of Illinois and Jo Daviess County.

**ANSWER:**   Defendants admit the allegations in the first and second sentences of paragraph 8, except Chief Deputy Fulrath has served as Chief Deputy since December 2, 2006.  Defendants deny the remaining allegations in paragraph 8 as inconsistent with Illinois law.

9.     Donald Schweihs, is the Public Defender for Jo Daviess County and Carroll County and is a private attorney with an office in Galena, Illinois, and is licensed and authorized to practice law within the State of Illinois. At all times relevant herein, Donald Schweihs is being sued individually and in his official capacity as Public Defender for Jo Daviess County. Mr. Schweihs, at all relevant times, was acting in concert with and under color of law with Jo Daviess County, the Jo Daviess County Sheriff's Office, Sheriff Hefel and Chief Deputy Fulrath to violate the plaintiff's rights under Section 1983.

**ANSWER:**   Defendants admit the first two sentences of paragraph 9.  Defendants deny the remaining allegations in paragraph 9.

## STATEMENT OF FACTS

10.     Prior to Defendant Hefel taking office as Sheriff of Jo Daviess County, Plaintiff Sergeant Kirk Raab had only minor performance related disciplinary matters.

**ANSWER:**    The allegations in paragraph 10 are denied.

11.    Prior to November, 2006, Defendant Donald Schweihs was the public defender for Jo Daviess County and was a private attorney practicing in Galena, Illinois.

**ANSWER:**    The allegations in paragraph 11 are admitted.

12.    Prior to November, 2006, Defendant Schweihs ran for office for the Jo Daviess County State's Attorney position on one prior occasion. Mr. Schweihs lost the election for Jo Daviess' County State's Attorney.

**ANSWER:**    The allegations in paragraph 12 are admitted.

13.    Following his loss, beginning in 2004, Defendant Schweihs began to interrogate his own clients through the Jo Daviess County Public Defenders' Office and falsely telling others within Jo Daviess County that Plaintiff, Sergeant Raab and others were involved in illegal drug deals and using planes and boats to transfer drugs and using drugs to set up innocent people.

**ANSWER:**    The allegations in paragraph 13 are denied.

14.    At no time did Defendant Schweihs produce any evidence to support his false accusations although he was specifically asked to provide them by the Jo Daviess County Sheriff's Office.

**ANSWER:**    The allegations in paragraph 14 are denied.

15.    In fact, Lieutenant Wand went to several "sources" who Defendant Schweihs claimed supported his accusations. All of these "sources" denied that they ever told Defendant Schweihs any information about Sgt. Raab, but that Defendant

Schweihs was the person who was accusing Sgt. Raab and others in the Sheriff's

Department of making illegal drug deals and doing illegal activities.

**ANSWER:**    The allegations in paragraph 15 are denied.

16.    Following the false accusations of the Defendant Schweihs, then Acting

Sheriff Brian Melton requested the Jo Daviess County State's Attorney to initiate a

criminal investigation against Sergeant Raab and Detective Ketelsen for any possible

criminal activity based on Defendant Schweihs's accusations. State's Attorney Kurt

denied the request for lack of any supporting evidence of a crime.

**ANSWER:**    Defendants deny that Schweihs made false accusations against plaintiff.

Defendants lack knowledge sufficient to form a belief as to the remaining allegations of

paragraph 16 and therefore deny same.

17.    On or about August 29, 2006, the then acting Sheriff, Brian Melton filed

an official complaint against Defendant Shweihs with the Illinois Attorney

Registration & Disciplinary Commission regarding defendant Schweihs' actions

including but not limited to, accusing Sergeant Raab and Detective Ketelsen of being

drug dealers, that the Jo Daviess County Sheriff's Office was full of corruption and

was involved in a murder cover up.

**ANSWER:**    Defendants admit that there was an ARDC complaint filed against

defendant Schweihs that was dismissed.  The remaining allegations in paragraph 17 not

specifically admitted are denied.

18.    In or around July or August of 2006, an Inspector with the Drug

Enforcement Agency contacted Acting Sheriff Brian Melton and stated that

Defendant Schweihs had contacted his agents and agents of the Federal Bureau of Investigations at the Rockford, Illinois office to request an investigation be conducted against Sergeant Kirk Raab. The Inspector advised Acting Sheriff Brian Melton that his agents did conduct a preliminary investigation and found no credible evidence against Sergeant Raab for any unlawful narcotic activity and stated that a case was not even opened due to the lack of supporting information.

**ANSWER:**    The allegations in paragraph 18 are denied.

19.    Upon information and belief, at all times prior to the November, 2006 election for Jo Daviess' County Sheriff, Schweihs was a supporter of Defendant Sheriff Leo Hefel when he was running for the Sheriff's office.

**ANSWER:**    The allegations of paragraph 19 are admitted.

20.    During the election in 2006 for a new Sheriff, Lieutenant Tim Wand also ran in the primaries for the Jo Daviess' County Sheriff's Office.

**ANSWER:**    The allegations of paragraph 20 are admitted.

21.    During the election, Sergeant Raab was a vocal supporter of Lieutenant Wand's bid for the Sheriff's Office and acted as Lieutenant Wand's campaign manager.

**ANSWER:**    Defendants lack knowledge sufficient to form a belief that Raab acted as Wand's campaign manager.  The remaining allegations in paragraph 21 are admitted.

22.    After Defendant Sheriff Hefel took office as the Jo Daviess' County Sheriff in December, 2006, Defendant Hefel, Defendant Fulrath, and Defendant

Schweihs, began a systematic and concerted effort to intimidate, harass and retaliate against Plaintiff for exercising his First Amendment rights.

**ANSWER:**    The allegations in paragraph 22 are denied.

23.    On or about December 1, 2006, Defendant Colin Fulrath stated during a mandatory department meeting, "if anyone tries to undermine myself or the Sheriff, you will be sorry".

**ANSWER:**    The allegations in paragraph 23 are admitted.

24.    On or about December 1, 2006, Defendant Fulrath asked Detective Ketelsen about the complaint filed with the Attorney Registration Disciplinary Committee about Defendant Don Schweihs and if there were any pending lawsuits against any of the defendants.

**ANSWER:**    The allegations in paragraph 24 are denied.

25.    On or about December 1, 2006, Defendant Hefel ordered Sgt. Raab to switch rotations, which is switching his work schedule to different days. Further, Defendant Hefel switched Sgt. Raab's shift from the night shift to the day shift. Sgt. Raab had been on the night shift as the "Night Supervisor" for the past 4 to 5 years and had been on the same rotation since he was hired at the Sheriff's Department. No other officers in the Sheriffs department had their rotations changed.

**ANSWER:**    Defendants lack knowledge sufficient to form a belief as to the truth of the third sentence of paragraph 25 and therefore deny same.  The remaining allegations of paragraph 25 are admitted.

26.    On or about December 6, 2006, Defendant Hefel ordered Sgt. Raab to drive from one side of Jo Daviess' County where he was on duty to the Sheriff's office to provide the serial numbers from his duty weapon. Defendant Hefel did not order anyone else in the department to personally appear to provide serial numbers but rather told them to email him the information.

**ANSWER:**    The allegations of paragraph 26 are denied.

27.    Upon information and belief, on or about December 29, 2006, Defendant Hefel and a member of his transition team, Tom Martin, went to the Stephenson County Jail, a jail that is out of Defendant Hefel's jurisdiction, and interviewed an inmate, William Sperry, about Sgt. Raab and alleged drug activity.

**ANSWER:**    Defendants admit that Sheriff Hefel and Tom Martin met with inmate William Sperry at the Stephenson County about allegations that had been made concerning plaintiff. The remaining allegations in paragraph 27 not specifically admitted are denied.

28.    On or about January 11, 2007, Sgt. Raab checked onto work detail on the night shift when Defendant Sheriff Hefel ordered him to call into the department to ask him what he was doing. When Sgt. Raab explained his work for the night, Defendant Sheriff Hefel ordered Sgt. Raab to come into the Sheriff's office to speak with him. When Sgt. Raab arrived at the Sheriff's department, Defendant Sheriff Hefel began to interrogate him regarding the number of service calls Sgt. Raab had in one shift and what kind of calls Sgt. Raab responded to. Defendant Sheriff Hefel

does not interrogate other officers in the Sheriffs office in the same manner

regarding their service calls.

**ANSWER:**   Defendants admit that they met with plaintiff on January 11, 2007

concerning plaintiff's service calls.  The remaining allegations in paragraph 28 are

denied.

29.     In that same meeting on January 11, 2007, Defendant Sheriff Hefel asked

Sgt. Raab about a receipt he turned in which Defendant Sheriff Hefel claimed was

late and caused the County to incur a late charge. At the same time, several other

officers in the department, including Defendant Chief Deputy Fulrath, had

outstanding receipts that were not turned in. Sgt. Raab was the only officer that was

given a written reprimand.

**ANSWER:**   Defendants admit that Sheriff Hefel questioned plaintiff about his failure

to turn in receipts on a timely basis and causing the sheriff's office to incur a late charge.

The remaining allegations in paragraph 29 are denied.

30.     In the same meeting on January 11, 2007, Defendant Sheriff Hefel then

said "I question whether you love your job or not", "...you got involved in politics.

Anyone who gets involved in politics must not love their job because they do not

know what the outcome will be". Sgt. Raab responded and said "I have always

supported someone during an election and when it is over, the outcome doesn't

matter you move on, its politics". Defendant Sheriff Hefel stated, "you guys got

involved in asking questions at the debates and you did it just to fuck with me..."

Defendant made further comments about Sgt. Raab being involved in the elections

with Lt. Wand and ended with "Well I am going home. Be safe out there and write some warnings. I don't care about tickets, but turn the lights on, write some warnings and make me look good."

**ANSWER:**    The allegations in paragraph 30 are denied.

31.    On or about January 12, 2007, Defendant Fulrath called Sgt. Raab on his day off. Defendant Fulrath began to question Sgt. Raab about his on-duty activity the night before. Sgt. Raab explained he forgot to call on the radio about business checks he performed after his meeting with Defendant Hefel and put them into the sheriff's system, a/k/a "CAD", but that there was no official policy to place business checks into the system at that time. Defendant Fulrath then asked why Sgt. Raab left his shift a few hours early. Sgt. Raab then explained that he had asked Defendant Fulrath earlier in the week that if command officers who do not get overtime and have hours built up can take off a few hours early without calling in to Defendant Fulrath and Defendant Fulrath stated that if it was just a few hours it was ok.

**ANSWER:**    Defendants admit the first two sentences of paragraph 31. Defendants admit that plaintiff admitted not calling on the radio as required and defendants deny that there is no official policy on that subject. Defendants admit that Chief Deputy Fulrath asked why plaintiff left his shift early. The remaining allegations of paragraph 31 are denied.

32.    On January 12, 2007, Sgt. Raab received a written letter stating that he would be suspended for one day for not having his activity called in to the station, for not placing information into the CAD system, and for taking off early without

Command approval. Further, Defendant Fulrath wrote that Sgt. Raab did not know that he was supposed to call the station about his activity. This was not the conversation Sgt. Raab and Defendant Fulrath had earlier in the evening. Other officers in the Sheriff's office are not being treated in the same manner as Sgt. Raab as there was no policy that requires input of activity into the CAD system at that time.

**ANSWER:**    The allegations of the first two sentences of paragraph 32 are admitted. The remaining allegations of paragraph 32 are denied.

33.    On or about January 22, 2007, Sgt. Raab turned in a written response to Lt. Brian Melton, Chief Deputy Fulrath and Sheriff Hefel regarding the suspension denying the allegations in the letter by Defendant Fulrath that he did not have permission to leave early and that there was no policy for inputting data into Sheriff's CAD System.

**ANSWER:**    The allegations of paragraph 33 are admitted.

34.    On or about January 22, 2007, Sgt. Raab also turned in a written response to Lt. Melton, Chief Deputy Fulrath and Sheriff Hefel regarding the alleged late receipt.

**ANSWER:**    The allegations of paragraph 34 are admitted.

35.    On or about January 22, 2007, Defendant Hefel and Defendant Fulrath ordered Sgt. Raab into Defendant Fulrath's office to discuss Sgt. Raab's upcoming suspension day. Defendant Hefel asked whether Sgt. Raab was working the next day and said "we are going call you and have you come in and we are going to suspend

you for leaving early." Defendants Hefel and Fulrath would not give the date for Sgt. Raab's suspension while he was in the office, but rather ordered him to come in the next day during his shift to get suspended. Further, Sgt. Raab was ordered to pay the $37.00 late fee from the alleged late receipt that was turned in by Sgt. Raab. No other employees of the Sheriff's department are treated in the same manner.

**ANSWER:**    The last sentence of paragraph 35 is denied.  The remaining allegations of paragraph 35 are admitted.

36.    On or about January 23, 2007, Sgt. John Korth told Sgt. Raab that he had spoken with Kathy Lippert, the Sheriffs Department secretary, regarding the late fee that Sgt. Raab was ordered to pay by Defendant Hefel. Ms. Lippert told Sgt. Korth that it was a combination of all of the credit cards, not just Sgt. Raab's that created the late fee.

**ANSWER:**    The allegations of paragraph 36 are denied.

37.    On or about January 23, 2007, when Sgt. Raab reported to work, neither Defendant Hefel nor Defendant Fulrath called Sgt. Raab into their office regarding his suspension. Later that day, Defendants Hefel and Fulrath gave Sgt. Raab a suspension date of January 31, 2007 and Defendant Hefel stated "just think of it as another day off".

**ANSWER:**    The allegations of paragraph 37 are admitted.

38.    On or about January 23, 2007, Defendant Fulrath again changed Sgt. Raab's shift from days to nights, and stated the reason was so that a new deputy could

be on the dayshift and learn the county. However, another deputy on the dayshift was not asked to change his shift although Sgt. Raab is of a higher rank in the department.

**ANSWER:**    The allegations of paragraph 38 are admitted.

39.    On or about February 5, 2007, Defendant Hefel had Sgt. Raab call into the Sheriff's Department and ordered Sgt. Raab to call him when he got to the parking lot and to write down the odometer reading to Sgt. Raab's assigned car and take it to him. When Sgt. Raab arrived at Defendant Hefel's office, he then told Sgt. Raab that his credit card and department cell phone were being taken away for alleged misuse. Sgt. Raab has never been questioned about misuse of his department phone or credit card use prior to Defendant Hefel taking office. Other command personnel and detectives have received memorandums regarding use of too many minutes on department cell phones but have never had their department cell phones taken away.

**ANSWER:**    The allegations of paragraph 39 are denied.

40.    Defendant Hefel took only the cell phones and credit cards of Sgt. Raab and Lt. Tim Wand for alleged misuse.

**ANSWER:**    The allegations of paragraph 40 are denied.

41.    On or about February 5, 2007, Defendant Hefel also questioned Sgt. Raab about February 1, 2007 when he had called in sick. When Sgt. Raab stated he was home all day, Defendant Hefel asked him "are you sure about that?" and said "you did not leave the house?" and laughed at Sgt. Raab and called Defendant Fulrath into his office. Defendant Hefel then asked Sgt. Raab whether he had any

house closings on Thursday, February 1, 2007, and when Sgt. Raab responded that it

was actually on Friday, February 2, 2007, Defendant Hefel then changed the subject.

**ANSWER:**    Defendants admit that Sheriff  Hefel asked plaintiff about a house closing.

The remaining allegations of paragraph 41 not specifically admitted are denied.

42.    At the same meeting, Defendant Hefel again switched Sgt. Raab's shift

from nights to days without an explanation.

**ANSWER:**    The allegations of paragraph 42 are denied.

43.    On or about February 5, 2007, before the command meeting that night,

Defendant Fulrath told Sgt. Raab that he was taking away the Field Training Officer

title from him. Defendant Fulrath informed Sgt. Raab that two people told him that Sgt.

Raab did not train them in accidents.  However, when Sgt. Raab stated that if Defendant

Fulrath looked at their daily observation reports it would show that they were both

trained in accidents.  Defendant Fulrath then stated, "well this is the way it is going to

be".

**ANSWER:**    Defendants admit the first two sentences in paragraph 43.  The remaining

allegations in paragraph 43 are denied.

44.    Defendant Hefel also asked Sgt. Raab how many houses he owned. When

Sgt. Raab replied and asked Defendant Hefel why he was asking, Defendant Hefel

changed the subject and began talking about personal cell phone use. When it was

explained to Defendant Hefel that the previous Sheriff and Chief Deputy allowed them

to use it, Defendant Hefel became silent.

**ANSWER:**    Defendants admit that Sheriff Hefel asked plaintiff about houses he owned.  The remaining allegations in paragraph 44 are denied.

45.    After the meeting, Sgt. Raab asked Defendant Hefel why he was asking about the number of houses he owned. Defendant Hefel then stated that he had heard that Sgt. Raab owned a lot of land and houses and was hanging out with drug dealers. This is the same information that Defendant Schweihs was spreading about Sgt. Raab.

**ANSWER:**    The allegations of paragraph 45 are denied.

46.    Sgt. Raab was told by several dispatchers within the department that every morning after Sgt. Raab gets off his shift, Defendants Hefel and Fulrath ask for the mileage on Sgt. Raab's patrol vehicle.  No other officer in the department is asked about mileage of their patrol vehicles.

**ANSWER:**    The allegations of paragraph 46 are denied.

47.    On or about February 8, 2007, Defendant Don Schweihs met with Defendant Sheriff Hefel in his office in closed door meeting. Don Schweihs is the public defender for the County of Jo Daviess. These closed door meetings occurred on a regular basis. Defendant Schweihs is the Jo Daviess County Public Defender, he is not affiliated with the Sheriff's department in any manner.

**ANSWER:**    Defendants admit the last sentence of paragraph 47.  The remaining allegations of paragraph 47 are denied.

48.    On or about February 9, 2007, a dispatcher told Sgt. Raab that Defendant Hefel was telling people in the department about how Sgt. Raab had paid

for a piece of property in cash. These statements were made following Defendant

Hefel's comments about hearing that Sgt. Raab was involved with drug dealers from

Defendant Schweihs.

**ANSWER:**    The allegations of paragraph 48 are denied.

49.    On or about February 9, 2007, Sgt. Raab hurt his right knee, right elbow

and back while on duty. He was taken off of work by his doctor and began to receive

workman's compensation benefits.

**ANSWER:**    Defendants admit that plaintiff filed a worker's compensation claim in

February 2007 and received worker's compensation benefits.

50.    On or about February 20, 2007, Defendant Hefel told Detective Craig

Ketelsen that he, Tim Wand and Sgt. Raab should think twice about filing a lawsuit

because although they may win they would be "sorry" about it afterwards.

**ANSWER:**    The allegations of paragraph 50 are denied.

51.    On or about March 1, 2007, Defendant Hefel and Schweihs again went

into a closed door meeting with part of Defendant Hefel's transition team, Tom

Martin and Stacy Knapp. Defendant Schweihs is the Jo Daviess County Public

Defender, he is not affiliated with the Sheriff's department in any manner.

**ANSWER:**    Defendants admit the last sentence of paragraph 51.  The remaining

allegations of paragraph 51 are denied.

52.    On or about March 18, 2007, while Sgt. Raab was on workman's

compensation for a work related injury, Sgt. Raab was at a rental house he owned

with his two sons and a carpenter. While Sgt. Raab was at the rental house,

Defendant Hefel without permission, walked into the home and went up the stairs and stood in the doorway to a room and asked Sgt. Raab "what's going on?" Defendant Hefel then began to inquire about Sgt. Raab's work related injury and when he would be back to work. This is despite the fact that Sgt. Raab reports to Defendant Chief Deputy Fulrath after every doctor report and after doctor reports are faxed to the Sheriff's Office. No one present at the house gave Defendant Hefel permission to enter the home at any point in time.

**ANSWER:**    Defendants admit that on or about March 18, 2007 Sheriff Hefel spoke with plaintiff about when plaintiff would return to work.  The remaining allegations of paragraph 52 not specifically admitted are denied.

53.    The tenant that resided at the premises owned by Sgt. Raab contacted Defendant Hefel about him entering the premises without her permission. He took no action. The tenant then contacted the Warren Police Department, the State Police and the Jo Daviess' State's Attorney who all did nothing against Defendant Hefel for entering the premises without permission.

**ANSWER:**    The allegations of paragraph 53 are denied.

54.    Sgt. Raab also contacted the Jo Daviess' State's Attorneys Office regarding Defendant Hefel's unauthorized access to his home. The State's Attorney's Office referred the matter to the Attorney General's Office who told Sgt. Raab that he had a "good civil lawsuit" but refused to bring forth criminal charges against Defendant Hefel.

**ANSWER:**    Defendants deny that Sheriff Hefel made unauthorized access to plaintiff's home.  Defendants lack knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 54 and therefore deny same.

55.    After Sgt. Raab was injured at work, upon information and belief, at the direction of Defendant Hefel, Robert Albrecht followed Sgt. Raab around, took photographs of Sgt. Raab, and reported to Defendant Hefel about Sgt. Raab's activities. Upon information and belief, Robert Albrecht is a close personal friend of Defendant Hefel and has no official affiliation with the Sheriff's Department.

**ANSWER:**    Defendants admit that Robert Albrecht is a friend of Sheriff Hefel and is not affiliated with the Sheriff's Office.  The remaining allegations of paragraph 55 are denied.

56.    On or about May 15, 2007, Robert Albrecht told the Sheriff's Department that he believed Sgt. Raab set fire to a dump truck on his property without any evidence. The matter was referred to the Illinois State Police. Sgt. Raab has never been charged criminally nor questioned about the matter.

**ANSWER:**    Defendants admit that they received a complaint that plaintiff set fire to a dump truck on his property.  Defendants lack knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 56 and therefore deny same.

57.    On or about May 25, 2007, Defendant Fulrath contacted Sgt. Raab and asked how his knee was doing. He then told Sgt. Raab that he was going to have him come into work the following week and put him on light duty despite the last two

work restrictions stating that Sgt. Raab had total incapacitation. Defendant Fulrath then requested that the paperwork be resent to him.

**ANSWER:**    Defendants admit that Chief Deputy Fulrath contacted plaintiff regarding the status of his return to work. The remaining allegations of paragraph 57 are denied.

58.    On or about May 25, 2007, Defendant Hefel sent a memorandum to Sgt. Raab that he was not to delay surgery on his knee for any personal reasons such as vacation. On May 29, 2007, Sgt. Raab responded to Defendant Hefel stating that the delay in the surgery was not due to him but a delay with the workman's compensation adjusters and that surgery was scheduled for June 8, 2007.

**ANSWER:**    The allegations of paragraph 58 are admitted.

59.    On or about June 5, 2007, Sgt. Raab received another phone call from Defendant Fulrath regarding his shoulder and knee injuries. Although he had the information directly from the physicians, Defendant Fulrath began questioning Sgt. Raab about where he was getting surgery, when the surgery was, what time the surgery was, and if he was going to stay in the hospital.

**ANSWER:**    Defendants admit that Chief Deputy Fulrath contacted plaintiff regarding the status of his medical condition. The remaining allegations of paragraph 59 are denied.

60.    On or about June 18, 2007, Defendant Fulrath again contacted Sgt. Raab asking him about his knee and shoulder injuries and asked that Sgt. Raab contact him following his post operation appointment the following day.

**ANSWER:**    The allegations of paragraph 60 are admitted.

61.    On or about July 25, 2007, Defendant Fulrath denied a vacation request by Sgt. Raab although no one else's vacation requests were denied in the department and stated "Kirk has been off long enough, I am going to deny his vacation".

**ANSWER:**    Defendants admit that Chief Deputy Fulrath denied plaintiff's vacation request in July 2007.  The remaining allegations of paragraph 61 not specifically admitted are denied.

62.    On or about October 2, 2008, [sic] while Sgt. Raab was on workman's compensation for his work related injury, Defendant Hefel sent two squad cars to Sgt. Raab's house to deliver a written order stating that Sgt. Raab was to report to the City of Warren Police Department and to stay at the location until he was personally contacted and relieved by members of the Jo Daviess County Sheriff's Office.  Sgt. Raab was not told why he was to report to the Warren Police Department.

**ANSWER:**    The allegations of paragraph 62 are denied.

63.    On or about October 4, 2007, Sgt. Raab arrived at the Warren Police Department where he was given a random drug test. The test was administered by Jo Daviess' County Sheriff's Police Officers, Lt. Brian Melton and Sgt. Kevin Turner. Defendant Hefel ordered only Command Officers to have the drug tests done, not all employees.  All of the Command Officers in the Jo Daviess County Sheriff's Office knew they were receiving a drug test that day.  Sgt. Raab was the only command officer that did not know the reason for the official order to report to the Warren Police Department. All the drug test samples were placed into envelopes and

returned to the Jo Daviess County Sheriff's Office.  Before Defendant Hefel took office, pursuant to Sheriff's policy and orders, all drug testing was to be done randomly and not a specific group was to be targeted.

**ANSWER:**    Defendants admit that random drug testing of command officers occurred on the date and time alleged.  The remaining allegations of paragraph 63 not specifically admitted are denied.

64.    On December 18, 2007, Sgt. Raab went to the hospital for shoulder surgery for a work related injury.

**ANSWER:**    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations of paragraph 64 and therefore deny same.

65.    On or about January 7, 2008, Sgt. Raab was released to work light duty. Defendant Hefel refused to allow Sgt. Raab to return to work on a light duty basis in accordance with his work restrictions although there are persons within the department that are performing light duty functions on a part-time basis.

**ANSWER:**    Defendants admit that plaintiff was not permitted to work light duty.  The remaining allegations of paragraph 65 not specifically admitted are denied.

66.    On or about February 19, 2008, Sgt. Raab was served with a letter that he was to be interviewed regarding his return to employment without physical limitation and whether or not he had been employed in any manner from February 8, 2007 to the date of the interview.

**ANSWER:**    The allegations of paragraph 66 are admitted.

67.     On February 22, 2008, Sgt. Raab appeared for his interview and was questioned regarding secondary employment and his physical condition for over two hours.

**ANSWER:**     The allegations of paragraph 67 are admitted.

68.     Sgt. Raab's wife conducts a home business which sells items on eBay. All of the checks and 1099s are in the name of Sgt. Raab's wife.

**ANSWER:**     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations of paragraph 68 and therefore deny same.

69.     On or about March 19, 2008, Sgt. Raab was again served with a notice to appear before Defendant Hefel regarding his physical condition and the business that is run by Sgt. Raab's wife.

**ANSWER:**     The allegations of paragraph 69 are admitted.

70.     On March 27, 2008, Sgt. Raab appeared for the interview and was ordered by Defendant Hefel to turn over his entire income tax returns, including schedules from 2004-2007.  Defendant Hefel never gave a reason for why he wanted the entire income tax returns including the schedules and would not accept W2 forms and 1099s.

**ANSWER:**     The allegations of paragraph 70 are admitted.

71.     After the meeting of March 27, 2008, while Sgt. Raab and his family were out of state on vacation, Defendant Fulrath contacted Sgt. Raab's wife's employer to inquire about any secondary employment that she has. Defendant Fulrath identified himself to a co-worker of Mrs. Raab as an official with the Jo Daviess County

Sheriff's Office and stated "we have an ongoing investigation and were wondering if Kelly Raab has a second job". Defendant Fulrath never identified that the investigation was an internal investigation of Sgt. Kirk Raab and not a criminal investigation. The employee told Defendant Fulrath that he needed to speak to someone higher up in the bank and Defendant Fulrath proceeded to contact the President of the company.

**ANSWER:**   Defendants admit that Chief Deputy Fulrath contacted plaintiff's wife's employer.  The remaining allegations of paragraph 71 not specifically admitted are denied.

72.     Upon information and belief, Defendant Hefel and Fulrath attempted to approach the Jo Daviess County State's Attorney's Office and the County Board to fire Sgt. Raab for various reasons which were denied.

**ANSWER:**   The allegations of paragraph 72 are denied.

## COUNT I

### SECTION 1983- DEPRIVATION OF RIGHT TO FREE SPEECH

73.     Sergeant Raab hereby re-alleges the allegations in paragraphs 1 through 72 of his Complaint as though fully set forth herein.

**ANSWER:**   Defendants restate their answers to paragraphs 1-72 for their answer to paragraph 73 as though fully set forth herein.

74.     Defendants individually and in conspiracy, and acting under color of the authority vested in them by statute, ordinance, regulation, custom or usage of the State of Illinois and the County of Jo Daviess, Illinois, subjected and caused to be

subjected Sergeant Raab, a citizen of the State of Illinois to the deprivation of his

rights, privileges and/or immunities secured by the Constitution and laws, namely

the First Amendment of the United States Constitution.

**ANSWER:**    The allegations of paragraph 74 are denied.

75.    Sergeant Raab's support of another candidate for the position of Sheriff

of Jo Daviess County related to a matter of public concern. The comments and

conduct of Sergeant Raab involving political matters unrelated to his employment

constitute the highest degree of speech protected by the United States Constitution.

**ANSWER:**    The allegations of paragraph 75 are denied.

76.    The complained of conduct by Defendants occurred under color of state

law.

**ANSWER:**    The allegations of paragraph 76 are denied.

77.    The Defendants' conduct arose in retaliation to Sergeant Raab's exercise

of his constitutionally protected right to freedom of speech. The above-alleged

comments of Sergeant Raab were a substantial motivating factor by Defendants for

their wrongful conduct.

**ANSWER:**    The allegations of paragraph 77 are denied.

78.    Defendants' conduct will continue and Sergeant Raab will continue to

be irreparably harmed unless enjoined by this Court.

**ANSWER:**    The allegations of paragraph 78 are denied.

WHEREFORE, defendants Sheriff Hefel, Chief Deputy Fulrath, and County of Jo Daviess deny that they are liable to plaintiff and pray that Count I be dismissed with costs assessed against plaintiff.

## COUNT II

## EQUAL PROTECTION, FEDERAL LAW

Defendants make no response to the allegations contained in this count as defendants have filed a separate motion to dismiss Count II.

## COUNT III

## SUBSTANTIVE DUE PROCESS AND LIBERTY, FEDERAL LAW

Defendants make no response to the allegations contained in this count as defendants have filed a separate motion to dismiss Count III.

## COUNT IV

## FALSE LIGHT

Defendants make no response to the allegations contained in this count as defendants have filed a separate motion to dismiss Count IV.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants make no response to the allegations contained in this count as defendants have filed a separate motion to dismiss Count V.

## AFFIRMATIVE DEFENSES

Defendants, in addition to the denials and defenses set forth hereinabove this pleading, assert the additional affirmative defenses to plaintiff's claims as follows:

### First Affirmative Defense

Plaintiff's claims against the individual defendants are barred by the doctrine of qualified immunity.

### Second Affirmative Defense

Plaintiff's claims are barred by the applicable statute of limitations.

### Third Affirmative Defense

Plaintiff would have been treated the same even in the absence of the protected conduct.

### Fourth Affirmative Defense

Defendant, County of Jo Daviess, is immune from punitive damages for the allegations of civil rights violations in plaintiff's complaint, and the request for such damages must be stricken from plaintiffs' complaint.

### Fifth Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Sixth Affirmative Defense

Defendants acted in good faith, with justification and without malice toward Plaintiff.

### Seventh Affirmative Defense

Plaintiff's speech did not concern a matter of public concern and is not protected

COUNTY OF JO DAVIESS, SHERIFF LEO
HEFEL, CHIEF DEPUTY COLIN FULRATH

By:    s/Julie A. Bruch

Julie A. Bruch # 6215813
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone:  (847) 291-0200
Fax: (847) 291-9230
E-mail:  jbruch@okgc.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

KIRK RAAB,                                        )
                              Plaintiff,          )        Case No.: 08 C 50087
                                                  )
       v.                                         )        Judge Reinhard
COUNTY OF JO DAVIESS, JO DAVIESS                  )        Magistrate Judge Mahoney
COUNTY SHERIFF'S OFFICE, SHERIFF                  )
LEO HEFEL in his official capacity as            )
Sheriff of Jo Daviess County and his             )
Individual capacity, CHIEF DEPUTY                 )
COLIN FULRATH, in his official capacity           )
DONALD SCHWEIHS, in his official                  )
Capacity as County of Jo Daviess Public          )
Defender and in his individual capacity,         )
                                                  )
                              Defendants.         )

## CERTIFICATE OF SERVICE

       I hereby certify that on July 3, 2008, I electronically filed Defendants' County of
Jo Daviess, Sheriff Hefel, and Chief Deputy Fulrath Answer and Affirmative Defenses
to Count I with the Clerk of Court using the CM/ECF system which will send
notification of such filing to the following:

Martin A. Dolan                            Mark A. Rouleau
mdolan@dolanlegal.com                      rouleau-law@insightbb.com

Myco T. Dang
mdang@dolanlegal.com

                                           COUNTY OF JO DAVIESS, SHERIFF
                                           LEO HEFEL, CHIEF DEPUTY COLIN
                                           FULRATH

                                           By:    s/Julie A. Bruch_____
                                           Julie A. Bruch # 6215813
                                           O'Halloran Kosoff Geitner & Cook, LLC
                                           650 Dundee Road, Suite 475
                                           Northbrook, Illinois 60062
                                           Telephone: (847) 291-0200
                                           Fax: (847) 291-9230
                                           E-mail: jbruch@okgc.com