UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| KIRK RAAB, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|  -vs- ) | No.   08 C 50087 |
| ) | |
| COUNTY OF JO DAVIESS, JO DAVIESS ) | |
| COUNTY SHERIFF'S OFFICE, SHERIFF ) | |
| LEO HEFEL in his official capacity as ) | |
| Sheriff of Jo Daviess County and his ) | |
| Individual capacity, CHIEF DEPUTY ) | |
| COLIN FULRATH, in his official capacity ) | |
| As Chief Deputy and his individual capacity, ) | |
| DONALD SCHWEIHS, in his official ) | |
| Capacity as County of Jo Daviess Public ) | |
| Defender and in his individual capacity, ) | |
| ) | |
|     Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS**

    Plaintiff, Kirk Raab, through his attorneys, Dolan Law Offices, P.C., and in response to Defendants' Motion to Dismiss, states as follows:

    Plaintiff Kirk Raab filed a five-count complaint against the defendants' alleging violation of his first amendment right to free speech, equal protection, substantive due process violations, false light and intentional infliction of emotional distress.  Kirk Raab's complaint is that he suffered an orchestrated internal movement and conspiracy of targeted harassment and retaliation by the Defendants because Plaintiff Raab had politically aligned himself with an opponent of defendant Sheriff Hefel and defendant Schweihs in an election.  The Defendants fabricated reasons to investigate Plaintiff Raab, which included unsubstantiated and false allegations of drug-dealing, suspensions, and other disparate treatment. The defendants used their political power and influence to harass Raab.

1

Plaintiff Raab was summarily punished for alleged misconduct which had no basis in fact. The defendants wielded their political influence to have Plaintiff Raab repeatedly investigated and charged with violation of departmental rules for conduct that other officers within the Police Department, including the individual Defendants themselves, engaged in without any repercussions whatsoever. Throughout all of this, Defendants' offense at Plaintiff Raab's speech was the motivating factor for the harassment and retaliation against Plaintiff.

## STANDARD

In ruling on a 12(b)(6) motion, the court cannot decide disputed fact issues; rather the court must assume that all material facts contained in the complaint are true. *Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). In essence, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor." *Cortes-Devito v. Vill. of Stone Park,* 390 F.Supp. 2d 706, 710 (N.D. Ill. 2005). No claim should be dismissed on a 12(b)(6) motion unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," Id. (*quoting Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984)), which is not the case here. On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) *quoting Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

## ARGUMENT

**I.     Jo Daviess County Sheriff's Office is a proper entity as the Seventh Circuit recognizes the Sheriff's Department is a suable entity**

The office of sheriff is created by Article VII, Section 4, of the Illinois Constitution of 1970 (Ill. Const.1970, art. VII, § 4(c)). The Court in *DeGenova*, a decision from the 7th Circuit, recognized that "the Illinois Constitution, Illinois Supreme Court and Illinois statutory provisions… overwhelmingly designate the Sheriff's office as a local entity apart

from the state". *DeGenova v. Sheriff of DuPage County,* 209 F.3d 973 (7th Cir. 2000). "Within the sheriff's prescribed range of activity, he and not some legislative-type body is at the apex of the governmental pyramid." *Hvorcik v. Sheahan*, 847 F.Supp. 1414, 1417 n. 7 (N.D.Ill. 1994). Therefore, the Sheriff's office has a legal existence separate from the county and the State, and is thus a suable entity. *Franklin v. Zaruba,* 150 F. 3d 682, 685 (7th Cir. 1988). Jo Daviess Sheriff's Office is an entirely proper defendant in this jurisdiction.

The claims set forth against defendants Deputy Chief Fulrath and Donald Schweihs are not duplicative of the claims against Sheriff Hefel as there are different defendants, elements and remedies available for each. The statement of facts and claims against Defendant Schweihs and Fulrath in their official capacity are distinct and separate from those made against Sheriff Hefel as set forth with specificity in the complaint.

**II.     Jo Daviess County can be held liable for maintaining a custom, practice or policy of harassment and retaliation for the exercise of a constitutionally protected right namely, the First Amendment Right of Free Speech**

The County of Jo Daviess seeks dismissal from this lawsuit. Their basis for dismissal is the claim that the county has no authority to control the actions of the sheriff and therefore cannot be liable for the actions of the Sheriff. The law on this point is clear. The County cannot be sued directly for the actions of constitutional officers of the County who do not serve at its pleasure. *Ryan v. County of DuPage,* 45 F.3d 1090, 1092 (7th Cir. 1995); *Franklin v. Zaruba,* 150 F.3d 682, 684 (7th Cir. 1998). There is no *respondeat superior* liability of the County for damages its constitutional officers may cause. *Moy v. County of Cook,* 159 Ill.2d 519, 640 N.E.2d 926 (1994), *Thompson v. Duke,* 882 F.2d 1180 (7th Cir.1989). Here though, Plaintiff is not alleging the County is liable through the doctrine of respondeat superior, rather Plaintiff Raab alleges the County is liable because of its' custom, practice or policy of retaliating against employees who do not politically align themselves with certain candidates. If they do not play by the rules, repercussions follow.

3

Governmental liability under Section 1983 will arise when the official policy is "the moving force of the constitutional violation". *Polk County v. Dodson,* 454 U.S. 312, 326 (1981). Raab has sufficiently alleged that the County has a custom, practice or policy which allows for the disparate treatment of those individuals who express their political views and do not support a chosen candidate. As such, the County is clearly a proper entity.

**III.** **Defendant Schweihs is not entitled to dismissal of any claims against him as Schweihs acted under color of state law, deprived Raab of his First Amendment right of Free Speech, Schweihs statements are not privileged and the claims are not time barred**

a. Plaintiff Raab had alleged enough facts to show Defendant Schweihs was acting under color of law and retaliated against him for the use of his First Amendment rights

There are sufficient allegations, which have been pled in the complaint that support Plaintiff's contention Schweihs was acting under color of state law when he retaliated against Raab. A Section 1983 actions can lie against *private individuals* acting in a governmental capacity. *Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003); private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state *Flagg Bros. v. Brooks,* 436 U.S. 149, 157-58 (1978), exercising eminent domain, *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352-53 (1974), or when there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself. *See Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir. 1992); *see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001) (noting that a challenged activity may be state action "when it is entwined with governmental policies or when government is entwined in [its] management or control."); *Layne v. Sampley,* 627 F.2d 12, 13 (6th Cir. 1980).

Raab has also pled enough facts to suggest Defendant Schweihs was acting in concert with government agents. A complaint which alleges a conspiracy among all defendants to make false charges for the purpose of removing plaintiffs from their state employment

4

alleging action by persons acting under color of law to carry out a purpose in which both state officials and private persons joined states a claim under 42 U.S.C. § 1983. *Colaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970). Here Defendant Schweihs' actions when he acted in collusion with Defendant Hefel suggest a sufficient governmental nexus that rises to the level of acting under color of state law.

In *Easter House v. Felder*, 852 F.2d 901 (7th Cir. 1988) the Appellate Court held that private individuals could be held liable under §1983 actions for acting in concert with governmental officers in instituting licensing investigations. In that case the court stated:

> "This case has been before this court four times during its twelve-year history. Early in the litigation, the ***private defendants*** filed a motion to dismiss. This motion convinced the district court that Easter House had ***failed to show that the private defendants had acted "under color of state law."*** The district court therefore dismissed Easter House's charges against the private defendants for failure to state a claim under 42 U.S.C. Section 1983. ***This court reversed*** in an unpublished order ***which held that the conspiracy allegations contained in count one of Easter House's complaint made out an adequate claim of action under color of state law***. *Easter House v. State of Ill., Dep't of Children and Family Servs.*, 577 F.2d 747 (7th Cir.1978)." *Easter House v. Felder,* 852 F.2d 901 (7th Cir. 1988)

"[W]hen authority derives in part from Government's thumb on the scales, the exercise of that power by private persons becomes closely akin, in some respects, to its exercise by Government itself." *Pub. Util. Comm'n v. Pollak*, 343 U.S. 451, 462 n. 8 (1952) quoting *Am. Commc'n Assoc. v. Douds*, 339 U.S. 382, 401 (1950).

In *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984) our Appellate Court stated:

> "As this Court outlined *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979), reversed in part on other grounds, 446 U.S. 754:
>
> > A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage. "*Rotermund v. United States Steel Corp.*, 474 F.2d 1139 (8th Cir. 1973) (citation omitted).
> > * * *
> > * * *

5

A plaintiff seeking redress need not prove that each participant in a conspiracy knew the "exact limits of the illegal plan or the identity of all participants therein." *Hoffman-LaRoche, Inc.*, supra, 447 F.2d [872 (7th Cir.1971)] at 875.

A complaint need not plead the facts of a civil conspiracy with particularity, *Quinones v. Szorc*, 771 F.2d 289 (7th Cir. 1985); *Griffin v. Breckenridge*, 403 U.S. 88, 102, (1971); *Hoffman v. Halden*, 268 F.2d 280, 294-95 (9th Cir. 1959), overruled in part on other grounds, *Cohen v. Norris*, 300 F.2d 24, 29-30 (9th Cir. 1962). The very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement; circumstantial evidence of the conspiracy, particularly regarding the overt acts performed in furtherance of the conspiracy, is all that is ordinarily obtainable before discovery and trial. *Quinones v. Szorc*, 771 F.2d 289 (7th Cir. 1985). The complaint must simply plead sufficient facts from which a conspiracy can be inferred; the facts detailing the conspiratorial agreement can be pleaded generally, while those facts documenting the overt acts must be pleaded specifically. *Quinones v. Szorc*, 771 F.2d 289 (7th Cir. 1985); *Magayanes v. City of Chicago*, 496 F.Supp. 812, 815-16 (N.D. Ill.1980); *Maniaci v. Warren*, 314 F.Supp. 853, 856 (W.D.Wis.1970); See also *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970).

In *Reuber v. U.S.*, 750 F.2d 1039 (D.C. Cir. 1985) the court found

> "The defendants here are not federal officials, nevertheless, the defendants may be deemed federal actors. The defendants' private status shield is lost when they act in such a way as to create an integrated alliance with the government and their conduct therefore is imbued with the power and prestige of government officials. The facts alleged here strongly suggest this is such a case."

In *Dennis v. Sparks,* 449 U.S. 24 (1980), the Supreme Court held that a private party who bribed a judge to issue an order was acting "under color of law," the Supreme Court observed that "[p]rivate persons, jointly engaged with state officials in a challenged action, are acting "under color" of law for purposes of § 1983 actions." *Id.* Specifically, "the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge. Under these allegations, the private parties conspiring with the judge

6

were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability." *Id.* at 28. On the other hand, if the private actor had merely resorted to the courts and prevailed in the lawsuit, he would not have been acting under color of law. See also *Yiamouyiannis v. Chemical Abstracts Serv.*, 521 F.2d 1392 (6th Cir.1975) (holding that plaintiff-scientist's complaint that he was harassed, defamed and constructively discharged for publicly expressing views contrary to those of HEW stated a cause of action against his private employer under Bivens ).[1]

A private actor may be held responsible for aiding and abetting the violation of a norm that requires state action or action under color of law. The court in *Kadic v. Karadzic,* 70 F.3d 232 (2nd Cir.1995)*,* held that "certain forms of conduct" violate the law of nations only when undertaken by state actors or those acting under color of law. *Kadic,* 70 F.3d at 239.

In *Khulumani v. Barclay Nat'l. Bank Ltd.*, 504 F.3d 254 (2nd Cir. 2007) the court stated:

> It is of no moment that a private actor could be held liable as an aider and abettor of the violation of a norm requiring state action when that same person could not be held liable as a principal. In our domestic law, it is "well settled that one may be found guilty of aiding and abetting another individual in his violation of a statute that the aider and abettor could not be charged personally with violating." In re Nofziger, 956 F.2d 287, 290 (D.C.Cir. 1992); United States v. Tannenbaum, 934 F.2d 8, 14 (2d Cir.1991) ("The fact that the accused does not possess the legal capacity to commit the substantive offense does not mean that he cannot be convicted ... of aiding and abetting the commission of the substantive offense by another. Thus, the inability to commit the substantive offense is immaterial." (citations omitted)). Indeed, "[t]he doctrine is of ancient origin." *Nofziger,* 956 F.2d at 291.

*United States v. Price,* 383 U.S. 787 (1966), which arose out of one of the saddest episodes of the civil rights movement, provides another compelling example of this subgroup.[2] The Supreme Court held that private individuals who participated directly with state actors pursuant to a common design were acting under color of law. "In effect, if the

---

[1] *Yiamouyiannis v. Chemical Abstracts Serv.*, 521 F.2d 1392 (6th Cir.1975) is cited for the general proposition that constitutional damages actions are available against private parties as long as state action is established. Whether the particular plaintiff in Yiamouyiannis was able to meet the state action requirement on remand is irrelevant for our purposes.

[2] *Price* involved the arrest and subsequent murder of three civil rights workers in Mississippi by state actors

7

allegations are true, they were participants in official lawlessness, acting in willful concert with state officers and hence under color of law." *Id.* at 795. *Price* is a classic example of the rule that private parties act under color of law when they are "engaged in a conspiracy with state officials to violate the Fourteenth Amendment." *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 214 n. 12 (2nd Cir. 1984); *Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 272-73 (2nd Cir. 1999); *Alexis v. McDonald's Rests. of Mass. Inc.,* 67 F.3d 341, 352 (1st Cir. 1995); *Mershon v. Beasley,* 994 F.2d 449, 451 (8th Cir. 1993); *Annunziato v. The Gan, Inc.,* 744 F.2d 244, 251 (2nd Cir.1984).

"[A] state actor may be subject to liability for an action physically undertaken by private actors in violation of the plaintiff's liberty or property rights if the state actor directed or aided and abetted the violation." *Dwares v. City of New York,* 985 F.2d 94, 98 (2nd Cir.1993). On the other hand, where the primary actor is a public official, for a private actor to be deemed a state actor, he must jointly participate in the wrongful conduct, pursuant to a common design or plan. As the Supreme Court explained in *Adickes v. S.H. Kress & Co.*, "[t]he involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights. . . . Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983." 398 U.S. 144, 152 (1970).

    b.    **Defendant Schweihs statements are not absolutely privileged under the First Amendment as Plaintiff has alleged Schweihs intended public disclosure of information which removes it from privilege**

The defendant Schweihs claims that his reports to the FBI and DEA (or officials within Jo Daviess County) of alleged illegal drug activity by Raab is absolutely privileged and protected by the First Amendment. The plaintiff has not sued Schweihs for liable or slander. He has been sued for a conspiracy to deprive Sergeant Raab from exercising his right to free political speech (Count I), conspiring to deprive him of the equal protection of the laws

8

(Count II); conspiring to deprive him of Due Process of the Laws (Count III); conspiring to cast him in False Light before the public (Count IV); and conspiring to Intentionally Inflict Emotional Distress on him (Count V). The only one (1) of these counts that is based in defamation is Count IV for casting in false light. In that count the allegations were that the defendants conspired to place him in a false light before the *public*. (Document 1 paragraph 90).

Even if Schweihs statements to the FBI & DEA are entitled to absolute privilege that does not defeat Raab's claim that Schweihs was engaged in a civil conspiracy to deprive him of the rights to free speech, equal protection of the laws, due process of the laws, to cast him in false light and to intentionally inflict emotional distress on him does not address the fact that the plaintiff has plead sufficient allegations against defendant Schweihs as an absolute privilege does not create an absolute immunity it merely protects the defendant from liability for the words spoken. Here a conspiracy has been alleged. See *Auriemma v. Montgomery*, 860 F.2d 273, 278-79 (7th Cir. 1988) (declining to extend absolute immunity to attorneys' extrajudicial investigation because such an investigation is not subject to judicial safeguards and protections), cert. denied, 492 U.S. 906 (1989). Absolute privilege only extends to communications which are communicated to those in law enforcement and not those made to general members of the public. (See, *Scheib v. Grant*, 22 F.3d 149 (7th Cir. 1994) holding that privilege attaches as long as no extrajudicial disclosures are made; *Colaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976) where press releases were outside scope of privilege.) Here the allegations show that the defendant intended public disclosure of the information which removes it from the privilege.

    c.    **Plaintiff Raab's claims are not untimely since Defendant Schweihs conduct constitutes a continuous tort**

Defendant Schweihs asserts that because his conspiratorial conduct began outside the statute of limitations that the case against him is time barred. Recently in *Wallace v. Kato,* 127 S.Ct. 1091

9

(2007), the court looked to state law both for the basic statute of limitations and for any pertinent tolling rules. 127 S.Ct. at 1098-99. The courts recognize various things which toll the running of the statute of limitations including the discovery rule[3], and the doctrine of a continuing tort.[4] The doctrine of continuing violation, as the Illinois Supreme Court has held, "does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves viewing the defendant's conduct as a continuous whole for prescriptive purposes." *Feltmeier v. Feltmeier,* 207 Ill.2d 263, 279, 798 N.E.2d 75 (2003). Here the defendant has not shown from the face of the pleadings when the conspiracy ceased, when the plaintiff last suffered injuries from his tortious conspiracy or when the plaintiff first knew or should have known of the defendant's conspiratorial conduct. These are all questions of fact that must be resolved by way of a trial or motion for summary judgment and are premature at this stage of the proceedings. Therefore, the claims against Defendant Schweihs are not time barred.

### IV.    Plaintiff Raab has clearly alleged enough facts to support his claim of equal protection violations by defendants

Defendants argue Raab cannot claim his equal protection rights have been violated. The rationale behind this line of thinking is the position that the class of one theory of equal protection does not apply in the public employment context. Defendants rely upon the decision in *Engquist v. Or. Dep't of Agric.,* 128 S. Ct. 2146 (2008). At issue in *Engquist v. Or. Dep't of Agric.*, were a public employee's allegations that she had been "arbitrarily treated differently from other similarly situated employees," and that such treatment gave rise to a class-of-one equal protection claim. *Id at* 2149. A jury awarded Engquist damages based on that claim, but the Ninth Circuit reversed, finding such a claim inappropriate in the public employment context. The Supreme Court agreed with the Ninth Circuit below, rejecting Engquist's argument that the Court's per curiam holding in *Vill., of Willowbrook v. Olech* 528 U.S. 562 (2000) should be extended to public employment cases. While agreeing that the protection of the Equal Protection Clause applies to the government when it acts as an employer, the Supreme Court declined to

---

[3] Jogi v. Voges, 480 F.3d 822 (7th Cir. 2007)
[4] *Hyon Waste Management Services, Inc. v. City of Chicago,* 214 Ill.App.3d 757, 762-763, 158 Ill.Dec. 335, 574 N.E.2d 129 (1991),

10

extend that protection to class-of-one claims. The facts in that case are distinguishable from the matter here.

In *Enquist*, the plaintiff was being harassed for seemingly no reason whatsoever. Here, Raab is being subjected to disparate treatment by his superiors because of his political affiliations and views. He is being treated differently due to the exercise of his first amendment right of political speech. It is clear that a campaign of harassment in response to views expressed during a political campaign is actionable under section 1983 as a violation of the First Amendment. *Wallace v. Benware*, 67 F.3d 655, 663 (7th Cir. 1995). Additionally, the court in *Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989), explained that:

> "Harassment of a public employee for his political beliefs violates the First Amendment unless the harassment is so trivial that a person of ordinary firmness would not be deterred from holding or expressing those beliefs. The harassment need not be so severe as to amount to constructive discharge--that is, it need not force the employee to quit, by making work unbearable."

In the instant case, Plaintiff Raab, an employee of the Sheriff's Department, has been subjected to ongoing retaliation by his Superiors for his political alignment and support of another candidate for Sheriff. Defendants have employed an abuse of power, disparate treatment and unfair practices and procedures, in their treatment of Plaintiff. None of the other employees who supported Sheriff Hefel have been subject to the treatment Plaintiff Raab has had to endure. As such, Plaintiff Raab has alleged enough facts to support his allegations of an ongoing violation of his equal protection rights.

> **V.    Plaintiff Raab has sufficiently stated a cause of action that shows his substantive due process rights have been violated as he has a constitutionally protected property interest in his job**

The concept of liberty under the due process clause recognizes two particular interests of a public employee: (1) the protection of his good name, reputation, honor and integrity; and (2) his freedom to take advantage of other employment opportunities. *Hadley v. County or DuPage*, 715 F.2d 1238, 1244 (7th Cir. 1983), cert. denied, 465 U.S.

11

1006 (1984).

To succeed in his claim for deprivation of a liberty interest, Plaintiff must show that (1) the statements against him were severe enough to impose a stigma on him; (2) the stigmatizing statements were false and publicly disclosed; and (3) as a consequence he suffered tangible loss of other employment opportunities. *McMath v. Gary*, 976 F.2d 1026, 1031 (7th Cir.1992); *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991); *Mauke v. Town of Dune Acres*, 835 F. Supp. 468, 475 (N.D. Ind. 1993). Unfavorable employment decisions together with stigmatizing statements that are serious enough to affect employability are sufficient. *Wright v. Glover*, 778 F. Supp. 418, 422 (N.D. Ill. 1991).

Plaintiff has sufficiently stated a claim for deprivation of a protected right, a liberty interest in his employment. In this instance, Plaintiff Raab has been subject to false statements and allegations of drug dealing to various agencies by Defendant Schweihs, Sheriff Hefel and Deputy Fulrath. These statements are highly stigmatizing to Plaintiff Raab and his reputation in the community as a Sergeant of Jo Daviess Sheriff's Office. Additionally, these allegations have all but assured Plaintiff Raab will be unable to find employment at another other law enforcement agency. The Supreme Court has stated that an "action will suffice as an unfavorable employment decision if it raises the likelihood that potential employers will view the defamation as serious enough to affect employability". *D'Acquisto v. Washington*, 640 F. Supp. 594, 611 (N.D. Ill. 1986). No law enforcement agency will want to employ Plaintiff Raab with the drug dealing allegations trailing him wherever he goes. Widespread publicity is one of the ways a defamatory charge can deprive an individual of his liberty to pursue his occupation, which is exactly the case here. *Id at* 610. Additionally there is information in Plaintiff's personnel file which would be open to other law enforcement agencies if and when Plaintiff Raab chose to pursue other employment elsewhere. Undoubtedly this information would deter other agencies from wanting to employ him. An allegation of drug dealing by a law enforcement officer is a

12

serious charge which could substantially curtail job opportunities for a sergeant such as Plaintiff Raab. A person who has suffered retaliation for public speech may maintain an action for violation of the persons' due process rights because due process protects a liberty interest separate and independent from the right of free speech.

### VI. Plaintiff has stated a claim for false light as the defendants statements are not absolutely privileged, and any defamatory statements are not protected by the Illinois Tort Immunity Act

To state a claim for false light invasion of privacy, a plaintiff must allege and prove that: (1) he was placed in a false light before the public as a result of defendant's action; (2) the false light in which he was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice. *Brennan v. Kadner,* 351 Ill. App. 3d 963, 971; 814 N.E.2d 951, 959. (1st Dist. 2004) "The tort of false light invasion of privacy protects one's interest in being let alone from false publicity." *Id.* Plaintiff has sufficiently pleaded each of these elements.  Plaintiff Raab was placed in a false light by virtue of defendants' baseless accusations and unsubstantiated allegations of drug dealing.  No reasonable person would want to be known in the community as a drug dealer and these allegations would indeed by highly offensive to anyone.  Defendants' went and spoke to the DEA, FBI and others and asked these agencies to investigate Plaintiff Raab, knowing these accusations were false. These actions are all in retaliation and politically motivated due to Plaintiff Raab's support of another candidate.  There is no absolute privilege here and qualified privilege would only apply if the defendants had acted in good faith, which they have not. *Blair v. Walker*, 64 Ill. 2d 1, 5, 349 N.E. 2d 385, 387 (1976).

Additionally punitive damages are available for a state law claim of false light when the defendant acted with malice. Evidence sufficient to establish actual malice on the part of a defendant entitles a plaintiff in an action for *false light* to have his request for punitive damages considered by the trier of fact. *Edwards v. Paddock Publ'n, Inc.*, 327 Ill.App.3d 553

13

(1st Dist. 2001) 763 N.E.2d 328; *Poulos v. Lutheran Soc. Serv. of Ill., Inc*., 312 Ill.App.3d 731, 728 N.E.2d 547, 561 (1st. Dist. 2000).

VII. **The defendants' conduct does rise to the level of extreme and outrageous conduct and the claims are not time-barred as the continuing violation doctrine saves Raab's claims**

While conduct that might not otherwise be considered extreme and outrageous may become so due to the employment relationship between the plaintiff and the person who engaged in the conduct. *Milton v. Illinois Bell Tel. Co*., 101 Ill. App. 3d 75, 427 N.E.2d 829 (1st Dist. 1981).The rationale for this is that the nature of an employment relationship in which one person is in a position to harm another person's interests may magnify the seriousness of the conduct of the person occupying the position of authority, raising it to the level of outrageousness. See also *Restatement Second*, *Torts* § 46 comment e; Prosser and Keeton, On the Law of Torts § 12 (West Pub. Co. 5th ed. 1984). Raab has been subjected to false allegations, investigations and harassment by his superiors and other officials acting in concert with his superiors. The defendants knew or should have known their conduct would cause Raab severe emotional distress. Liability has been found when the conduct has been so outrageous in character Extreme and outrageous conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Milton v. Illinois Bell Tel. Co*., 101 Ill. App. 3d 75 at 78. The actions taken by the defendants do not "involve the day to day operation of the sheriff's office" as they suggest. Their actions were meant to harass, intimidate and retaliate against Raab for his political affiliations.

Secondly, the statute of limitations is not one year as the defendants suggest, rather, the applicable statute of limitations for a cause of action for the intentional infliction of emotional distress is two years. *Feltmeier v. Feltmeier*, 207 Ill 2d 263, 798 N.E. 2d 75,

14

(2003). This brings the applicable period to May 19, 2006. Additionally, under the "continuing tort" or "continuing violation" rule, "where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Belleville Toyota, Inc. v. Toyota Motor Sales*, *U.S.A., Inc.*, 199 Ill. 2d 325, 345, 770 N.E.2d 177 (2002).

Here Plaintiff Raab's claims are not untimely under the continuing violation rule. He has been retaliated against and continues to be retaliated against. The allegations continue to be spread in the community Raab lives and works. The continuing tort doctrine allows a plaintiff to get relief for a time barred act by linking it with an act that is within the limitations period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992).

## CONCLUSION

Plaintiff Raab's claims are well founded in both law and fact. Plaintiff respectfully request this Court deny Defendants' motion to dismiss. In the alternative, if the Court should find any deficiency in the Plaintiff's complaint, Plaintiff requests he be granted leave to amend his complaint at law.

Respectfully Submitted:

/s/ Martin A. Dolan
_____
An Attorney for Plaintiff Raab

**DOLAN LAW OFFICES, P.C.**
10 South LaSalle Street
Suite 3712
Chicago, Illinois 60603
(312) 676-7600
Firm I.D. 43525