# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 50087 | **DATE** | 8/5/2010 |
| **CASE TITLE** | Kirk Raab vs. County of Jo Daviess, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the court grants summary judgment as to all claims and dismisses this cause in its entirety.

*Philip G. Reinhard*

■ [ For further details see text below.]   Electronic Notices.

## STATEMENT - OPINION

Plaintiff, Kirk Raab, brings this action against Jo Daviess County (County), the Jo Daviess County Sheriff's Office, Sheriff Leo Hefel in his official and individual capacity, Chief Deputy Colin Fulrath in his individual capacity, and Donald Schweihs, the Public Defender of Jo Daviess County, in his individual capacity. Originally, plaintiff filed a five-count complaint alleging deprivation of his right to free speech under 42 U.S.C. § 1983 (Count I), equal protection violations (Count II), violations of substantive due process (Count III), and state law claims for false light (Count IV) and intentional infliction of emotional distress (Count V). The remaining defendants now move for summary judgment with respect to Counts I, IV, and V.[1]

Plaintiff has served as a deputy sheriff with the Jo Daviess County Sheriff's Department since December, 1999, and is currently a sergeant. In 2005, Sheriff Allendorf announced his retirement and the county board appointed Chief Deputy Brian Melton interim sheriff effective January 2006. Following this announcement, Leo Hefel, Lt. Tim Wand, and Elton Self emerged as Republican candidates for sheriff in the March 2006 primary.

Deputies generally favored Wand's candidacy, and plaintiff served as Wand's campaign manager. Hefel knew that plaintiff was associated with, and supported Wand's campaign. Rumors that plaintiff and other individuals within the Jo Daviess County Sheriff's Department were involved in the drug trade existed before the 2006 primary. These rumors prompted Hefel to run on a platform that emphasized reform. Hefel ultimately won the Republican primary and the general election.

Schweihs served as Public Defender of Jo Daviess County and supported Hefel's candidacy. Schweihs was aware of the rumors concerning plaintiff as these rumors persisted throughout the community, and some of Schweihs's clients implicated plaintiff. Prior to Hefel's becoming sheriff, Schweihs discussed plaintiff's alleged involvement in the drug trade with the Jo Daviess County State's Attorney's Office, the Carroll County State's Attorney's Office, the Federal Bureau of Investigation, and the Drug Enforcement Administration. None of these agencies elected to take action against plaintiff.

On December 1, 2006, Hefel became the sheriff, and Fulrath became Chief Deputy. Fulrath called a meeting and informed all employees that there was a new regime and if anyone tried to undermine the administration, they would be sorry. Hefel was leery of the prior administration and brought in a transition team to investigate past activity.

After Hefel took office, he switched plaintiff's shift to nights in order that a deputy trainee could get some day

shift patrol experience. This was consistent with Sheriff's Department policy and did not matter to plaintiff. Hefel and Fulrath checked the mileage on plaintiff's and others' vehicles. Hefel initiated an office-wide audit of cell phones and credit card records to curb abuse of these work privileges. Plaintiff's credit card and cell phone were confiscated, along with others, but the department reimbursed his expenses and provided a new cell phone in 2008. Hefel also stripped plaintiff of his training responsibilities. The parties dispute whether plaintiff properly trained officers, but plaintiff was not subjected to a pay reduction.

Schweihs visited Hefel's office multiple times in the months after the election. Around this time, Hefel, who was investigating other employees, began to focus his attention on plaintiff. Hefel made inquiries about plaintiff's properties and associations with drug dealers. Hefel also questioned an incarcerated William Sperry, a former client of Schweihs, about plaintiff's alleged involvement in the drug trade. Ultimately, Hefel did not find any incriminating evidence against plaintiff.

After Hefel took office, Melton, consistent with department policy, wrote up the plaintiff for failing to turn a receipt in on time. On January 11, 2007 Hefel and plaintiff met to discuss the write up. According to plaintiff, he told Hefel that he did not agree with the write up and that he loved his job. Hefel responded by stating, "Well I question if you love your job or not because you got involved in politics," and "you asked questions at the debate and you guys did that just to fuck with me." Plaintiff left the meeting upset and ultimately went home. Although Hefel and Fulrath suspended plaintiff for leaving work early and failing to call in his business checks, it is disputed whether plaintiff had permission to leave work early that day.

On February 9, 2007, plaintiff sustained an on-the-job injury and went on worker's comp for sixteen months. During this period, Hefel visited plaintiff at a rental property plaintiff owned. He also subjected plaintiff to a drug test that all command employees were required to take. Hefel and Fulrath also made inquiries into plaintiff's family's business dealings. The sheriff's department did not provide light duty work to plaintiff during this time. Plaintiff returned to work in June 2008, and he continues to work for the Jo Daviess County Sheriff's Department.

Summary judgment is appropriate where a moving party shows that there remains no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Greeno v. Daley, 414 F.3d 645, 652 (7th Cir. 2005). The evidence must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The district court "should not weigh the evidence and determine the truth of the matter but rather whether there is a genuine issue for trial." Lewis v. Chicago, 496 F.3d 645, 650 (7th Cir. 2007).

§ 1983 claim - Schweihs - Count I

In order to be held liable under 42 U.S.C. § 1983, an individual must have acted under the color of state law and deprived the plaintiff of a federal right. London v. RBS Citizens, N.A., 600 F.3d 742, 746 (7th Cir. 2010). In the context of a free speech retaliation claim, a plaintiff must show that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the retaliatory action complained of. Roger Whitmore's Automotive Services, Inc. v. Lake County, Illinois, 424 F.3d 659, 668 (7th Cir. 2005).

Action is taken under color of state law when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. Valentine v. City of Chicago, 452 F.3d 670, 682 (7th Cir. 2006). However, the Seventh Circuit applies a flexible approach in determining whether § 1983 may be applied to private individuals, and § 1983 may be applied where the "state effectively directs, controls, or encourages the actions of a private party" or that individual performs a function that is "traditionally the exclusive prerogative of the state." Wade v. Byles, 83 F.3d 902, 905 (7th Cir. 1996).

A public defender is not a state actor and therefore not a proper defendant under § 1983. Hamilton v. O'Meara, 2002 WL 1611601, * 1 (N.D. Ill. July 17, 2002), citing Polk County v. Dodsen, 454 U.S. 312 (1981); see also Rodriguez v. Plymouth Ambulance Serv., 577 F. 3d 816, 824 (7th Cir. 2009) (holding that public defender does not act under color of state law when performing the functions of counsel to his clients).

Here, Schweihs is not a state actor to the extent of his functions as an attorney for his clients. Thus, there can be no § 1983 liability in that regard. Plaintiff contends, however, that Schweihs was effectively acting under color of state law because he relied on his position as public defender to investigate plaintiff's suspected illegal activities. This argument misses the mark as it is apparent that Schweihs, although the public defender, was acting as an ordinary private citizen when he investigated plaintiff's activities. Thus, Schweihs cannot be held liable under § 1983 on that basis.

Alternatively, plaintiff relies on a conspiracy theory to subject Schweihs to § 1983 liability. A public defender may be liable where a plaintiff alleges and proves that they conspired with state actors. Tower v. Glover, 467 U.S. 914, 923–24 (1984). To avoid adverse summary judgment, § 1983 plaintiffs suing public defenders under a conspiracy theory must plead and offer sufficient evidence to support a conspiracy between a public defender and public actors. See Davis v. Union Nat'l Bank, 46 F.3d 24, 26 (7th Cir. 1994).

While either Hefel or Fulrath could serve as a state actor with whom Schweihs could conspire, plaintiff fails to provide sufficient evidence to establish a conspiracy to deprive plaintiff of his constitutional rights. The undisputed facts indicate that Schweihs supported Hefel's candidacy and that the two met following Hefel's assumption of the sheriff's office. However, plaintiff offers no evidence of the content of these discussions, let alone evidence of a conspiracy designed to deprive plaintiff of his constitutional rights. Nor is there any other evidence that Hefel directed Schweihs to investigate plaintiff. Without more, a jury could not find that Schweihs acted under the color of law. Accordingly, Schweihs is entitled to summary judgment on Count I.

§ 1983 claim - Hefel and Fulrath - Count I

In order to establish a prima facie case of unlawful First Amendment retaliation, a public employee must establish that: (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter them from exercising their First Amendment rights; and (3) his speech was a motivating factor in their employer's adverse action. Valentino v. Village of South Chicago Heights, 575 F.3d 664, 670 (7th Cir. 2009).

The retaliatory action, or deprivation, must be adverse, and a "materially adverse action," must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Hobbs v. City of Chicago, 573 F.3d 454, 464–65 (7th Cir. 2009). A materially adverse action exists if it might well have dissuaded a reasonable worker from engaging in the protected speech; examples may include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. Lapka v. Chertoff, 517 F.3d 974, 985 (7th Cir. 2008).

If a plaintiff establishes a *prima facie* case of retaliation, a defendant must show that it would have taken the same action even in the absence of the protected conduct. Love v. City of Chicago Bd. of Educ., 241 F.3d 564, 568 (7th Cir. 2001).

Here, Hefel and Fulrath did not retaliate against plaintiff. Plaintiff provides a litany of actions allegedly taken in response to his support of Wand's candidacy. However, plaintiff fails to establish a casual connection between his support of Wand and these allegedly retaliatory actions. Hefel's alleged statements, "Well I question if you love your job or not because you got involved in politics," and "you asked questions at the debate and you guys did that just to fuck with me," and Fulrath's warning not to undermine the new administration, while inartfully worded, are no more than the type of statements one might expect to be made by a leader who prevails in a contested political race in light of the need to move forward in a cohesive fashion. To the extent such statements can be read to infer some sort of retaliatory motive, such a mere scintilla of evidence is insufficient to establish a genuine issue of material fact. See Anderson, 477 U.S. at 255.

Additionally, the evidence does not demonstrate that plaintiff was subjected to materially adverse actions. Plaintiff may have been subjected to some inconveniences or alterations of job responsibilities. For example, plaintiff's shift changed, plaintiff lost his credit card privileges, and plaintiff was stripped of his training responsibilities. However, such conduct does not rise to the level of materially adverse action. Hobbs, 573 F.3d at 464–65. Plaintiff continues to work for the Jo Daviess County Sheriff's Department, has not had a pay cut, is still a Sergeant, and performs largely the same job.

Further, defendants have demonstrated that they would have taken the same actions in the absence of plaintiff's protected conduct. Most of the allegedly retaliatory actions alleged by plaintiff were the result of policy changes by the new administration, and these policy changes were universally applied. For example, the department checked everyone's car mileage. Other actions related to deficiencies in plaintiff's job performance. For example, plaintiff was suspended for failing to make his checks and leaving work early. Still other actions pertained to plaintiff's work related disability. For example, plaintiff's superiors wanted to make sure plaintiff was not working another job while receiving worker's compensation. While plaintiff maintains each of these actions were part of some larger conspiracy to punish him for exercising his right to free speech, the record supports the reasons proffered by defendants.

| STATEMENT - OPINION |
|---|

As plaintiff has failed to identify evidence sufficient to support his First Amendment retaliation claim as to Hefel and Fulrath, the court grants summary judgment on Count I as to the remaining defendants as well.[2]

State claim for false light - Hefel, Fulrath, and Schweihs - Count IV

Defendants further argue that plaintiff has failed to establish a claim for false light invasion of privacy.[3] In order to make a claim for false light invasion of privacy, a plaintiff must establish that: (1) the defendants' actions caused the plaintiff to be placed in a false light before the public; (2) the false light would be highly offensive to a reasonable person; and (3) defendants acted with malice or reckless disregard for whether the statements were true or false. Frobose v. American Sav. and Loan Ass'n of Danville, 152 F.3d 602, 617 (7th Cir. 1998) citing Kalgos v. Heftel Broadcasting Corp, 607 N.E.2d 201, 209 (1992).

Although defendants argue that plaintiff cannot satisfy the first two elements of his false light claims because defendants' statements were privileged,[4] plaintiff fails to establish the third element with respect to his false light claims against each defendant. The record does not evidence that Schweihs was reckless or possessed malice. In fact, asking law enforcement and state officials to investigate police corruption, of which Schweihs had a reasonable position, indicates good faith on his party in seeking the truth, and any of the comments attributed to Hefel of Fulrath were incidental to the investigation of official misconduct or a potential crime. Investigating official corruption or possible criminal activity, without more, does not evidence malice or reckless disregard for the truth of the statements. Accordingly, plaintiff fails to establish his false light claims, and summary judgment is entered for all defendants as to Count IV.

State claim for intentional infliction of emotional distress - County, Hefel, Fulrath, and Schweihs - Count V

Defendants also argue that plaintiff has failed to establish a claim for intentional infliction of emotional distress as alleged in Count V.[5] An intentional infliction of emotional distress claim requires a plaintiff to set forth evidence that (1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress. Cangemi v. Advocate South Suburban Hosp,, 845 N.E.2d 792, 813 (Ill. App. 2006). Defendants maintain that their conduct was neither extreme nor outrageous.

The law intervenes only "where the distress inflicted is so severe that no reasonable man could be expected to endure it." McGrath v. Fahey, 533 N.E.2d 806, 809 (Ill. 1988). The tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. McGrath, 533 N.E.2d at 809. The Supreme Court of Illinois has articulated a series of factors a court should consider when evaluating whether conduct is extreme and outrageous. McGrath, 533 N.E.2d at 809–811. A court should consider: (1) the power and control a defendant has over a plaintiff; (2) whether a defendant believed his objective was legitimate; (3) the defendant's awareness that the plaintiff is particularly susceptible to emotional distress. Graham v. Commonwealth Edison Co., 742 N.E.2d 858, 866–867 (Ill. App. 2000).

Plaintiff fails to establish that Schweihs engaged in extreme and outrageous conduct. The tort does not extend to verbal indignities, see McGrath, 533 N.E.2d at 809, and Schweihs' comments, though irksome, do not constitute extreme and outrageous behavior. Furthermore, each of the McGrath factors fall in Schweihs's favor. Schweihs had no position of authority over plaintiff, believed he had a legitimate objective, and was not aware of any of special sensitivies. As plaintiff fails to establish an intentional infliction of emotional distress claim against Schweihs, summary judgment is entered for Schweihs with respect to Count V.

Courts are particularly hesitant to find a claim for intentional infliction of emotional distress in employment situations. Graham,742 N.E.2d at 867. "[I]f everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." Graham, 742 N.E.2d at 867. Thus, where an employer has a legitimate purpose for its conduct, Lundy v. City of Calumet City, 567 N.E.2d 1101, 1103–04 (Ill. App. 1991), or follows internal policies and procedures for the disciplinary proceedings against a plaintiff in good faith, Grey v. First National Bank, 523 N.E.2d 1138, 1144 (Ill. App. 1988), an employer's conduct is not extreme and outrageous.

Entry of summary judgment in favor of Hefel, Fulrath, and County is warranted with respect to Count V. Although Hefel and Fulrath were plaintiff's superiors, they proffered reasonable objectives and were not aware of any special sensitivities plaintiff possessed. Graham, 742 N.E.2d at 866–867. While plaintiff may have preferred his old boss, courts are hesitant to find a claim for intentional infliction of emotional distress due to discipline or personality conflicts. Graham, 742 N.E.2d at 867. Furthermore, defendants had a legitimate purpose for their conduct and

| STATEMENT - OPINION |
|---|
| followed internal policies and procedures in their interactions with plaintiff. Accordingly, summary judgment in favor of the remaining defendants is warranted on Count V.<br><br>    For the aforementioned reasons, the court grants summary judgment as to all claims and dismisses this cause in its entirety. |

1. Counts II and III were previously dismissed by the court along with the Jo Daviess County Sheriff's Office, the official capacity claims against Fulrath and Schweihs, and the false light claim against the County and Hefel in his official capacity.

2. To the extent plaintiff is seeking to claim that Schweihs is liable solely because he conspired with Hefel and Fulrath, summary judgment would also be proper as to Schweihs.

3. Plaintiff's false light claim would be barred by the statute of limitations but for the continuing tort doctrine. "Where a tort involves a continuing or repeated injury, the limitations period does not begin until the date of the last injury or the date the tortious acts cease." Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 770 N.E.2d 177, 190 (Ill. App. 2002).

4. Defendants proffer three arguments in support of this claim. Defendants misapply 745 ILCS 10/2-201 and 2-109 of the Tort Immunity Act, and suggest that any form of speech cannot be regulated by virtue of the First Amendment. However, Illinois law provides that executive officials cannot be held liable for defamatory statements made in the performance of their duties. Dolatowski v. Life Printing and Pub. Co., 554 N.E.2d 692, 695 (Ill. App. 1990); Busch v. Bates, 753 N.E.2d 1184, 1192 (Ill. App. 2001)(applying absolute privilege to statements made by police officers during an internal investigation). When an absolute privilege is granted, no cause of action for defamation lies against the person making the statement, irrespective of whether the statement was made with malice. Busch v. Bates, 753 N.E.2d 1184, 1192 (Ill. App. 2001). This privilege exists in order to ensure that the official speak fearlessly, and reflects a policy which regards the ends to be gained by permitting such statements as outweighing the harm which may be done to the reputation of others. Busch, 753 N.E.2d at 1192.
    Absolute privilege shields Hefel and Fulrath from liability as their statements are related to an investigation of a deputy sheriff, who they had a legal obligation to investigate. See Busch, 753 N.E.2d at 1192. The fact that these statements may have been published to non-law enforcement personnel, such as Sperry, is irrelevant so long as the officers were performing an official duty. See Dolatowski, 554 N.E.2d at 695. As the record does not evidence Hefel or Fulrath making statements about plaintiff's's purported involvement in the drug trade outside the scope of their official duties, all of their comments concerning this subject are privileged.
    Schweihs would not enjoy this privilege as he was not an executive officer making statements in relation to his official duties.

5. Contrary to defendants' assertion, this claim is not time barred as plaintiff alleges and evidences facts within one year of the date in which he brought his claim.